DAVID & HAGNER, P.C., Plaintiff,

v.

DHP, INC. and Dover Administrative
Services, Inc., Defendants.

Civ. No. 94–276.

United States District Court,
District of Columbia.

Aug. 24, 1994.

William F. Causey, Warren C. Lutz, Jackson & Campbell, Washington, DC, for plaintiff.

Jonathan N. Portner, Allan J. Malester (pro hac vice), Gordon, Feinblatt, Rothman, Hoffberger & Hollander, David E. Beller, Office of Atty. Gen., Contract Litigation Unit, Baltimore, MD, for defendants.

## OPINION

JUNE L. GREEN, District Judge.

The parties in this action have filed cross motions for summary judgment. The Defendants have also filed a motion for leave to amend their answers to the Complaint. The Court heard argument on these motions on July 19, 1994 and, at the hearing, denied the Defendants' motion for leave to amend the answers. For the reasons stated below, the Court also denies the Defendants' motion for summary judgment and grants the Plaintiff's cross-motion.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted.

This case arises out of a contract between the Defendants Dover Administrative Services, Inc. ("DAS") and DHP, Inc., ("DHP") and the Plaintiff law firm of David & Hagner to "guarantee" the payment of the legal fees and expenses charged by David & Hagner in its representation of two debtor organizations in separate bankruptcy proceedings before the United States Bankruptcy Court for the District of Columbia.

The debtors were limited partnerships known as 1301 Connecticut Avenue Associates, L.P. ("1301 Associates") and 1606 New Hampshire Avenue Associates, L.P. ("1606 Associates"). DAS was the sole general partner of both 1301 Associates and 1606 Associates. DHP is the parent corporation of DAS.

*The Guarantee.* In June of 1988, Edward Cohen, an attorney authorized to represent DHP, DAS, and the debtors, met with David Kuney, a partner of the David & Hagner law firm, seeking legal representation for 1301 Associates and 1606 Associates in connection with their Chapter 11 bankruptcies. (*See* Affidavit of Edward E. Cohen, executed July 14, 1994 ("Cohen Aff.") at ¶¶ 3–6, as amended by the Second Affidavit of Edward E. Cohen, executed July 15, 1994; *and* Affidavit of David R. Kuney, executed June 13, 1994 ("Kuney Aff.") at ¶ 5.) David & Hagner alleges that it agreed to represent the debtors based, in part, upon DHP's promise to guarantee the payment of David & Hagner's legal fees and expenses regardless of Bankruptcy Court approval or payment by the debtors (the "Guarantee"). (Kuney Aff., ¶ 7.) The Guarantee was memorialized in a letter written by Mr. Kuney, dated February 24, 1989, to Edward Cohen ("Letter"). The Letter which was subsequently countersigned by Mr. Cohen provided:

> [DHP] hereby guarantees payment to our firm of any unpaid legal invoices in the event that the estate is unable, unwilling or does not pay the fees for any reason. Our firm will have an obligation to use its best efforts to first seek court approval for repayment from the debtor's estate. How-

ever, once these efforts have been exhausted, [DHP] will be liable for any shortfall. Any portion of this firm's bill which is not paid by the debtor's estate for any reason, including court disapproval, lack of financial resources, termination, conversion or dismissal of the case, or resignation of our firm due to non-compliance with this agreement, will require payment under this guarantee.

(Letter, dated February 24, 1989, at ¶ 4, attached to the Kuney Aff. at Tab A.)

Mr. Cohen signed the letter on March 6, 1989 as "Agent" beneath the following declaration: "The undersigned hereby accepts the terms set forth above and, on behalf of Dover Historic Properties, Inc., expressly acknowledges and agrees to the guarantee set forth in Paragraph 4." (*Id.*)

*Disclosure of the Guarantee to the Bankruptcy Court.* Although the Guarantee was signed in February 1989, the bankruptcies had been underway for more than half a year, having been transferred to the United States Bankruptcy Court for the District of Columbia from the Eastern District of Pennsylvania in June of 1988. (Cohen Aff., ¶ 3.) The parties to the Guarantee expressly applied their agreement retroactively. The letter containing the Guarantee provided that Mr. Cohen's "execution of this letter on behalf of Dover Historic Properties, Inc. ("Dover Historic") shall constitute Dover Historic's written confirmation of the guarantee we believed we had when we filed our initial petition to be retained as debtor's counsel with the Bankruptcy Court." (Letter, *supra*, ¶ 4.)

It was in that petition, filed in June 1988 in connection with the 1301 Associates' bankruptcy proceeding, that Plaintiff first disclosed to the bankruptcy court that DHP had agreed to guarantee David & Hagner's fees and expenses. (*See* Application For Order Authorizing Employment Of Counsel, filed June 24, 1988, attached as Tab 1 to the Appendix Accompanying Memorandum In Support of Motion For Summary Judgment of DHP, Inc., ("DHP Appendix") ("Dover Historic Properties, Inc. has agreed to guarantee the fees.").) An identical statement

regarding the guarantee was contained in the application for employment of counsel filed by the Plaintiff with the bankruptcy court on July 7, 1988 in the 1606 Associates' proceeding. (*See* Application For Order Authorizing Employment Of Counsel, attached as Tab D to the Kuney Aff.) These applications were approved by the bankruptcy court in identical Orders which did not address the Guarantee, but which provided "that any compensation of the law firm of David & Hagner, P.C., from the Debtor's estate, or any reimbursement out of the Debtor's estate of any compensation previously paid, will be subject to approval by this Court. . . ." (*See* Orders "Authorizing Employment of Counsel," dated July 11, 1988 and October 25, 1988, attached to the Kuney Aff. at Tabs C and F, respectively.)

Early in the bankruptcy proceedings, the Plaintiff also filed in each case a statement "Disclosing Compensation." These statements also referred to the Guarantee. The statement filed in connection with the 1606 Associates bankruptcy proceeding declared, for example:

Dover Historic Properties, Inc. has agreed to guarantee payment of David & Hagner, P.C., at its usual hourly rates for services rendered in connection with this case. To date, none of the funds received nor contemplated under the terms of the retainer agreement come from the estate of the above-captioned Debtor. Should any compensation be sought from the Debtor or should reimbursement for sums previously paid be sought from the Debtor, such compensation or reimbursment [sic] shall be subject to order of the Court.

(Statement Disclosing Compensation, dated July 7, 1988, at ¶ 1, attached to the Kuney Aff. at Tab E.) The disclosure statement filed in the 1301 Associates' proceeding contained substantially the same declaration, substituting the term "compensate" for the words "guarantee payment of." (*See* Statement Disclosing Compensation, dated June 24, 1988, at ¶ 1, attached to the DHP Appendix at Tab 1.)

The bankruptcy cases lasted approximately five years. During that period, David & Hagner filed five separate interim fee applications in the 1301 Associates case and periodically, in those applications, referred to the Guarantee. No fee applications were made in the 1606 Associates case because, as the parties agreed upon creating the Guarantee in February 1989: "it appears unlikely that this estate will have funds to pay for any legal services." (Letter, dated February 24, 1989, at ¶ 1, attached to the Kuney Aff. at Tab A.)

In its first interim fee application, Plaintiff again referred to the Guarantee, as follows: "Pursuant to an agreement with [DHP], David & Hagner has been compensated by [DHP] for services rendered and expenses incurred during the period June 1 through June 30, 1988. Consequently, any compensation approved by the Court from the Debtor's estate will be credited to [DHP]." (First Interim Application For Compensation By Attorneys For The Debtor, ¶ 11, attached to DHP Appendix at Tab 2.) In the four subsequent interim fee applications, Plaintiff wrote the following: "as required by Section 329 of the Code and Bankruptcy Rule 2016(b), David & Hagner, P.C. prepared and submitted to the Court a statement . . . acknowledging the guarantee of Applicant's fee by a non-Debtor entity." (*See* DHP Appendix' Tabs 4, 10, 12, and 16, at ¶ 1.)

The bankruptcy court dismissed the 1606 Associates' and 1301 Associates' bankruptcy cases on September 9, 1992, and January 10, 1994, respectively. (Kuney Aff., Tabs U, V.) In total, the bankruptcy court had allowed approximately $515,993 to be paid to Plaintiff out of the 1301 Associates estate. (Kuney Aff., ¶ 32.) In addition, DHP had paid David & Hagner a total of $313,286. (*Id.*) The sum of $259,706.59 that had been billed to DHP by the Plaintiff in connection with the two cases remained unpaid. (*Id.*)

Plaintiff asserts, without challenge, that throughout the bankruptcy proceedings neither the debtor, any creditor, nor DAS or DHP objected to the Guarantee, in or outside of the bankruptcy proceedings. Defendants aver that they repeatedly urged Plaintiff to file interim fee applications so that the money they had paid to Plaintiff would be reimbursed to them out of the estate.

This lawsuit, originally filed in the Superior Court of the District of Columbia, was removed to this Court by the Defendants on February 14, 1994.

## II. DISCUSSION

■ Summary judgment is appropriate only in those cases where there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All inferences must be construed in favor of the non-moving party. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986). Thus, summary judgment is warranted only where the record as a whole could not lead a reasonable finder of fact to rule in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–249, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In this case the Court must determine the validity of the Guarantee in light of Bankruptcy statutes and rules that govern the compensation of debtors' attorneys. Finding that the Guarantee does not violate the Bankruptcy Code, the Court rules that the Guarantee is an enforceable contract.

### A. The Guarantee and Bankruptcy Law.

The Defendants challenge the enforceability of the Guarantee on the premise that the Plaintiff failed to comply with the Bankruptcy Code in disclosing the Guarantee to the Bankruptcy Court and in seeking payments from DHP pursuant to the Guarantee. De-

fendants assert that David & Hagner did not disclose the terms and conditions of the Guarantee to the bankruptcy court, misled the bankruptcy court as to the nature of such terms and conditions, and failed in its duty to present fee applications for the payments sought under the Guarantee. The Plaintiff argues that it complied with the Bankruptcy Code in disclosing the Guarantee to the bankruptcy court and that it was not obligated under the Bankruptcy Code to submit fee applications for the allowance of payments from a third-party, non-debtor such as DHP. The Plaintiff also argues that after it disclosed the Guarantee to the bankruptcy court, the court approved the Plaintiff's employment as the debtors' attorney. Finally the Plaintiff argues that the Defendants failed to object to the Guarantee during the more than five years that the cases were pending before the bankruptcy court and therefore have waived any right to object at this time.

■ **Compensation of Attorneys.** Section 327 of the Bankruptcy Code requires that any attorney employed by a debtor-in-possession, such as the debtors involved in this case, be approved by the bankruptcy court.[1] Bankruptcy Rule 2014, which sets out the procedure for obtaining such approval, requires that the applicant file an application for an order of employment which states "specific facts" showing "any proposed arrangement for compensation." *See* Bankr.R. 2014(a).

■ A debtor's attorney is separately obligated under the Code to file a statement disclosing the "compensation paid or agreed to be paid" and "the source of such compensation." *See* 11 U.S.C. 329.[2] Section 328

---

1. Section 327 provides:
 (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
 This section is made applicable to debtors-in-possession by Section 1107 of the Bankruptcy Code. *See* 11 U.S.C. § 1107.

2. Section 329 provides in full:

 (a) Any Attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
 (b) If such compensation exceeds the reasonable value of any such services, the court may

further provides that the debtor-in-possession may employ an attorney "on any reasonable terms and conditions" subject to the court's power to change the compensation allowed to the attorney if such terms and conditions "prove to have been improvident in light of developments not capable of being anticipated." 11 U.S.C. 328(a).

The parties agree that under this statutory framework the Plaintiff was obligated to disclose the Guarantee to the bankruptcy court. They disagree on whether Plaintiff's disclosure of the Guarantee satisfied the statutory requirements.

■ The Court finds that the Plaintiff's disclosure of the Guarantee did not violate bankruptcy law. Plaintiff's applications and statements to the bankruptcy court revealed that a third-party, DHP, had agreed to guarantee payment of David & Hagner's fees at its usual hourly rates and that any application for reimbursement out of the debtors' estates would be subject to orders of the bankruptcy court. (*See*, e.g., Statement Disclosing Compensation, dated July 7, 1988, at ¶ 1, attached to the Kuney Aff. at Tab E.) Plaintiff's disclosure statements tersely communicated "specific facts" relating to the proposed compensation arrangement, as required under Bankruptcy Rule 2014, as well as identified the "source" of compensation required to be disclosed under Section 329 of the Bankruptcy Code. The Defendants' argument that David & Hagner was required to disclose all "terms and conditions" of the Guarantee to the bankruptcy court finds no support in the provisions of the Code. Indeed, the use of the phrase "terms and conditions" in Section 328, which does not relate to disclosure, indicates that Congress could have employed that phrase in Sections 327 and 329, and Bankruptcy Rule 2014, if it had intended to require compensation agreements to be set out verbatim.

The bankruptcy court, in approving the employment of David & Hagner in the two

cases did not detect any legal deficiencies in the disclosures made by debtors' counsel. The Defendants argue, however, that the bankruptcy court approved the Guarantee because it was either unaware of its objectionable provisions, or because the Plaintiff misled the court as to the true nature of the agreement.

■ First, Defendants assert that the bankruptcy court was unaware that the Guarantee purports to deprive the bankruptcy court of jurisdiction to review the Guarantee. This usurpation of jurisdiction is allegedly found in the Guarantee's provision that DHP will be liable for "any ... portion of [David & Hagner's] bill which is not paid by the debtor's estate for any reason, *including court disapproval....*" (*See*, Letter, dated February 24, 1989, at ¶ 4, attached to the Kuney Aff. at Tab A (emphasis added).)

The Court is not persuaded that the omission of the quoted term from the Plaintiff's disclosure is material to this case because, in the Court's view, it does not deprive the bankruptcy court of its jurisdiction to review the compensation paid under the Guarantee. Section 329 vests discretionary authority in the bankruptcy court to police agreements between counsel and non-debtor entities that result in unreasonable or excessive payments of compensation to debtor's counsel. The quoted provision from the Guarantee does not purport to limit this authority, as the provision pertains to payments allowed—or disallowed—from the *estate*, not the non-debtor entity. Thus, there is no Bankruptcy Code violation. The bankruptcy court was not divested of its authority to review compensation paid from DHP, it simply chose not to exercise that authority. As is discussed further below, the bankruptcy court did not wish to consider the payments made pursuant to the Guarantee and ordered the Plaintiff only to apply for approval of payments made out of the estate.

cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

 (A) would have been property of the estate; or

 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

The Defendants further argue that Plaintiff misled the bankruptcy court by informing it that the Guarantee was merely an agreement to advance fees, rather than to pay such fees. They rely primarily on a comment made by David & Hagner partner David Kuney to the bankruptcy court at an interim fee application hearing. At the hearing, one of the creditor's objected to the allowance of Plaintiff's fee application asserting that the guarantor of the fees had voluntarily undertaken to pay counsel's administrative claim, and thus no fees should be allowed from the estate. Mr. Kuney responded as follows:

[the creditor] says that fees should not be allowed [from the debtor's estate] because there is a guarantee arrangement between our firm and [DHP].

I guess I am at a loss to understand that issue. [DHP] is not the primary obligor. They have agreed to advance money to the firm pending approval by this Court of fee applications. That does not mean that they have paid the legal fees. They have advanced independently of this Court money to cover the firm, basically, to avoid the huge cash drain.

(Transcript Of Hearing Of First & Second Application For Interim Compensation, June 21, 1989, 3:22 p.m., at 7; attached to the Kuney Aff. at Tab M.)

Defendants read too much into this statement. The bankruptcy court's own comments do not reflect that it was misled, as the Defendants assert. For example, following Mr. Kuney's statement, the bankruptcy court demonstrated that it did not consider the guarantee to be only an agreement to advance funds: "THE COURT: Well, the guarantor is sitting back and saying, why shouldn't the debtor pay instead of my having to pay on the guarantee." (Transcript of Hearing, *supra*, at 19.) The bankruptcy court's view of the Guarantee, as expressed here, is the conventional one: that a guaran-

tor is liable upon the default of the primary obligor. *See, e.g.,* Black's Law Dictionary 634 (5th ed. 1979) (guarantee defined as "[a] promise to answer for payment of debt or performance of obligation if person liable in first instance fails to make payment or perform obligation.") The court reflected the same view upon overruling the creditor's objection, as follows:

The existence of a guarantor, in the Court's view, is largely irrelevant ... the debtor is the obligor and there is no just reason to take into account the existence of a guarantor in determining whether fees ought to be allowed and paid to a law firm that has provided services.

If the Court were to do that, it would discourage the practice of guarantors stepping in and *assuring that fees would be paid* pending granting of the fee application and that is not a desirable thing to have come about.

(Transcript Of Ruling In First & Second Application For Interim Compensation, June 21, 1989, 4:20 p.m., at 2; attached to the DHP Appendix at Tab 8 (emphasis added).) These comments persuade this Court that the bankruptcy court did not view the Guarantee as solely a mechanism for advances.

■ Separate from the issue of disclosure, the Defendants assert that Plaintiff was required by the Bankruptcy Code to apply to the bankruptcy court for the allowance of any payments received pursuant to the Guarantee. Plaintiff's failure to make such applications, Defendants argue, must result in (1) the return of all such payments already made by Defendants and (2) the forfeiture by Plaintiff of any present right to receive payments under the Guarantee.

Defendants cite to Bankruptcy Code Sections 330 and 331 in support of this claim. Section 330 provides that after notice and a hearing the court may award reasonable compensation for actual and necessary services rendered by the debtor's attorney.[3]

---

3. Section 330(a) provides in full:

**Compensation of Officers**

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case

Section 331 permits such compensation to be paid on an interim basis during the pendency of the bankruptcy case. *See* 11 U.S.C. § 331. These sections, however, do not expressly apply to payments from non-debtor sources. Furthermore, Bankruptcy Rule 2016(a), the rule that sets forth the procedure for obtaining the compensation authorized in Sections 330 and 331, expressly limits itself to applications for fees from the bankruptcy estate. *See* Bankr.Rule 2016(a) ("[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, *from the estate* shall file an application setting forth a detailed statement....") (emphasis supplied). Therefore, these Code provisions do not lend clear support to the Defendants' claim.

The cases cited by the Defendants are similarly inconclusive. Representative of such cases are *In re Key Largo Land, Inc.,* 158 B.R. 883 (S.D.Fla.Bankr.1993) and *In re Walters,* 868 F.2d 665 (4th Cir.1989). In *Key Largo,* the bankruptcy court considered the debtor's motion to disgorge debtor's counsel's fees or to compel a fee application regarding the fees in spite of the fact that the fees were paid by a third party. The bankruptcy court granted the motion, relying primarily upon an analysis of Section 329. The court found that a bankruptcy court's review of fees should not be limited "to only the arrangements made at the beginning of the attorney's representation." *In re Key largo Land, Inc., supra,* at 885. "Section 329 was enacted in response to the concern that payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." (*Id.,* at 885 (citation omitted)). The court in *In re Walters* similarly found that under Section 329 "any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwith-

standing the source of payment." *In re Walters, supra,* at 668 (citation omitted).

While these cases underscore the authority of the bankruptcy court to examine fees paid from a third-party to the debtor's counsel, they do not demonstrate that counsel must unilaterally apply to have such fees reviewed. It cannot be said that the bankruptcy court in this case did not serve the goals of Section 329 to protect creditors and prevent overreaching by debtors' counsel. The creditors in this matter were protected because the fees paid by DHP would not come out of the estate. Furthermore, with respect to all fees paid during the pendency of the bankruptcy cases, the bankruptcy court was able to review any fees that were paid by the guarantor, as such fees were ultimately reviewed in connection with fee applications to the debtor's estates. For these reasons, this Court does not believe that the Plaintiff's arrangement with the guarantor evaded the scheme outlined under the Bankruptcy Code.

The only case cited to the Court that closely examines the fee application sections of the Code in relation to non-debtor sources of attorney compensation, *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (N.D.Ill.E.D.Bankr.1990), flatly rejects the position put forward by the Defendants.

The *McDonald* court held that the "fee application procedure of Sections 330 and 331 must be followed whenever compensation is sought from the estate, but not when compensation has been obtained from another source." *In re McDonald, supra,* at 993. The court explained the basis for its conclusion, as follows:

Nothing in the provisions outlined above [Sections 330, 331, and Rule 2016(a)] authorizes a court to award compensation or reimbursement of expenses from a source other than the estate. To the contrary, an award of compensation under Section 330 is necessarily payable from the estate, since it becomes an administrative expense pursuant to Section 503(b)(2), which is in

---

may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the

cost of comparable services other than in a case under this title; and
**(2)** reimbursement for actual, necessary expenses.
11 U.S.C. § 330(a).

turn a priority expense under Section 507(a)(1). Such expenses must either be paid directly from liquidation of the estate, pursuant to Section 726(a)(1), or, indirectly, after the estate vests in the debtor upon confirmation, through a plan that provides for the payment of the expenses in 1322(a)(2). Professionals who were fully compensated through non-estate funds would receive duplicate compensation if they obtained an award pursuant to Section 330.

*In re McDonald, supra,* at 994. Because the bankruptcy court has no authority to award compensation from sources other than the estate, no applications were presented to it by the Plaintiff for the award of fees pursuant to the Guarantee. The bankruptcy court apparently held this view as well. Despite its awareness of the Guarantee during more than five years that the cases were pending, the bankruptcy court never invited applications for the allowance of payments from the guarantor, or suggested that Plaintiffs failure to make such applications violated the Bankruptcy Code.

 Notwithstanding the absence of any requirement to apply for the award of fees paid by a non-estate source, the bankruptcy court may review, under Section 329, the reasonableness of such fees. As noted above, this authority is discretionary. *See* 11 U.S.C. § 329(b) ("If such compensation exceeds the reasonable value of any such services, the court *may* cancel any such agreement, or order the return of any such payment....") (emphasis supplied). This Court finds that the bankruptcy court lawfully exercised its discretion not to review the payments made under the Guarantee. The bankruptcy court was presented in both cases with applications to employ counsel which disclosed the Guarantee. In each case the bankruptcy court granted such applications, ruling that

> any compensation of the law firm David & Hagner, P.C., from the Debtor's estate of

any compensation previously paid, will be subject to approval by this Court after proper application pursuant to the local rules of this Court.

(Order, July 11, 1988, attached to the Kuney Aff. at Tab C.) Thus, with respect to compensation from the estate, the Plaintiff is directed to make the appropriate application. As to compensation that had been "previously paid" no action was prescribed. These and other pronouncements by the bankruptcy court in its rulings on interim fee applications lead this Court to conclude that the bankruptcy court knowledgeably omitted any requirement that the Plaintiff seek bankruptcy court approval of payments from the guarantor. (*See, e.g.,* Hearing Transcript, April 2, 1991, at 5, attached to the Kuney Aff. at Tab O ("The guarantor of the applicant's fees ... has reportedly paid $309,444.63, such that $128,219.63 in fees not yet allowed or disallowed remain unpaid, but that will be of little relevance to the ultimate allowability of fees in this case...."); Hearing Transcript, June 21, 1989, 4:20 p.m. session, at 2 attached to the Kuney Aff. at Tab M ("The existence of a guarantor, in the Court's view, is largely irrelevant.... the debtor is the obligor....").)

For these reasons, the Court concludes that the Guarantee and the Plaintiff's conduct with respect to it before the bankruptcy court did not violate the Bankruptcy Code.[4]

### B. The Guarantee and Contract Law.

Turning to the question of whether the Guarantee is an enforceable contract, apart from bankruptcy law, the Court finds that the Defendants have raised no genuine issues of material fact to call into question the validity or enforceability of the Guarantee against DHP. At the same time, the Court finds that Plaintiff has not substantiated its case for liability against Defendant DAS. Accordingly, the Court grants the Plaintiff's

---

**4.** Defendants' argument that Plaintiff's claims under the Guarantee are barred by the doctrine of *res judicata* for its failure to present such claims to the bankruptcy court, *see* DHP Memorandum, at 28–32, as well as the contention that this Court has no jurisdiction to award attorneys

fees for services rendered in connection with a bankruptcy case, DHP Memorandum, at 18–22, are predicated on the assumption that Plaintiff violated its disclosure and fee application obligations under the Bankruptcy Code and, therefore, need not be addressed.

motion only as to DHP for the reasons stated below.

The Defendants do not dispute that their attorney, Edward Cohen, was authorized to represent DHP and DAS in negotiating the retention of David & Hagner in connection with the Chapter 11 bankruptcies of 1301 Associates and 1606 Associates. (*See* Cohen Aff., at ¶¶ 3–6; *and* Rule 30(b)(6) deposition of DHP, Inc., by its representative Scott F. Schaeffer, April 14, 1994 ("Schaeffer dep."), at 54–56.) Nor do they contest the execution by Mr. Cohen of the Guarantee in the exchange of letters dated February 24 and March 6, 1989 with David & Hagner. (Cohen Aff., ¶¶ 3–6; Schaeffer dep., at 54–56.)

Nonetheless, the Defendants assert that the Guarantee is unenforceable on numerous grounds which also raise genuine issues of fact to be litigated. Specifically, in their Statement of Genuine Issues of Material Facts[5] submitted pursuant to Local Rule 108(h), the Defendants contend (1) that the "February 29 [sic], 1989" letter was signed under duress; (2) that Plaintiff violated the terms of the Guarantee by failing to "use its best efforts to first seek court approval for repayment [of its fees and expenses] from the debtor's estate," as provided in the Guarantee; (3) that Plaintiff violated the terms of the Guarantee by not limiting its activities to $15,000 per month; and (4) that DAS is not obligated on the Guarantee. In addition, through the Cohen Affidavit and the Schaeffer deposition, the Defendants assert that they understood the Guarantee only to be an advance of funds that would be repaid out of fees approved for disbursement from the bankruptcy estates. These contentions will be discussed in turn.

**Duress.** To support the allegation of duress, the Defendants refer to the testimony of Scott Schaeffer, DHP's corporate designee, at his deposition:

Q. And is it not true, Mr. Schaeffer, that monies were paid to David & Hagner before fee applications were filed?

A. Yes; because we were under duress: Pay up or we are going to walk right in the middle of the case.

Q. When did that so-called duress first surface, in your opinion?

A. I don't remember. Initially around the time that this—I believe around the time that this purported guarantee was agreed to or was—

Q. It's DHP's testimony in this lawsuit through you that in February of 1989 the debtors or DHP were under duress to pay fees?

A. Well, I haven't discussed this with DHP's officer, but let me tell you, I'm giving you what I know.

(Schaeffer Dep., at 118–119, attached to DHP's Opp. to Pl.'s Mot. for Summ. J.)

Aside from this limited testimony, there is no evidence to substantiate the allegation that the Guarantee was signed under duress. Mr. Schaeffer fails to offer any corroboration for his claim. Moreover, he undermines his testimony by stating that he only became aware of the Guarantee some two years after it was executed. (*See* Schaeffer Dep., at 98–99.) Thus, Mr. Schaeffer lacks personal knowledge of the negotiations leading to the execution of the Guarantee. Edward Cohen, the attorney who negotiated the Guarantee, makes no allegation that it was signed under duress. These inconsistencies undermine the Defendants' attempt to raise an issue of fact with regard to duress. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the [party's] testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984) (citations omitted). The Court finds, consequently, that the issue of duress is not genuine.

■ **Best Efforts.** Next, the Defendants assert that Plaintiff failed, as required in the Guarantee, to "use its best efforts to first seek court approval for repayment [of its fees and expenses] from the debtor's estate." (*See* Def.'s Statement of Genuine Issues of Material Fact, *supra*, at ¶ 5.) Beyond citing the Guarantee, the Defendants, in their Statement of Genuine Issues of Material Fact, fail to refer to any facts in the record that support the allegation that Plaintiff did not use its best efforts to seek reimburse-

---

**5.** Defendants' Statement of Genuine Issues of Material Fact, filed June 27, 1994.

ment from the bankruptcy estates. Defendants' failure to make such references runs afoul of Local Rule 108(h) which provides:

> An opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which *shall include references to the parts of the record relied on to support the statement.*

Local R. 108(h) (emphasis supplied). Strict compliance with the foregoing rule has been emphasized in the courts of this Circuit. *See, Twist v. Meese,* 854 F.2d 1421, 1423–1425 (D.C.Cir.1988). "The failure to file a proper Rule 1–9(h) statement (now a 108(h) statement) in opposing a motion for summary judgment, may be fatal to the position of the non-complying party." *Id.,* at 1424 (citation omitted).

Notwithstanding Defendants' failure to substantiate the "best efforts" allegation in their Statement of Genuine Issues, they attempt to provide such support in the affidavit of Edward Cohen, filed shortly before the summary judgment argument in this case. In his affidavit, Mr. Cohen spoke to the issue of "best efforts," as follows:

> 8. After David & Hagner commenced work for the Debtors, the firm began to press DHP to advance payment of the firm's fees. At that time, I urged David & Hagner to file petitions for allowance of fees with the Bankruptcy Court and obtain payment from the Debtors' estates. In response, Mr. Kuney agreed to do so, but in fact was dilatory and defended David & Hagner's failure, stating something to the effect that there are some things you don't do when a house is on fire.

> \* \* \* \* \* \*

> 12. On a number of occasions, David Kuney promised that David & Hagner would diligently file fee applications with the Bankruptcy Court; however, the firm did not.

(Cohen Aff., ¶¶ 8, 12.) The Court shall consider these averments, despite the Defendants' violation of Local Rule 108(h), because Federal Rule of Civil Procedure 56 permits opposing affidavits to be served any time prior to the day of the summary judgment hearing. *See* Fed.R.Civ.P. 56(c). Nevertheless, the Court does not find that Mr. Cohen's statements raise any genuine issue of fact relating to the "best efforts" of the Plaintiff in the performance of the contract.

The "best efforts" clause in the Guarantee reads in full, as follows:

> Our firm will have an obligation to use its best efforts to first seek court approval for repayment from the debtor's estate. However, once these efforts have been exhausted, [DHP] will be liable for any shortfall.

(Letter from Kuney to Cohen of 2/24/89, *supra,* at ¶ 4.) The Defendants argue that David & Hagner breached this duty by not filing enough interim fee applications and by not filing them in a timely fashion.

This argument, first of all, does not apply in the case of 1606 Associates where DHP consented to the nonfiling of such fee applications. (*See, id.,* at ¶ 1 *and* Letter from Cohen to Kuney of 3/6/89, *supra,* at ¶ 1.)

As for the case of 1301 Associates, the Court does not find any genuine issue of fact relating to Plaintiff's "best efforts." Section 331 of the Bankruptcy Code permits the filing of applications for interim compensation not more than once every 120 days, without leave of court. *See* 11 U.S.C. § 331. Defendants argued at the hearing that where Plaintiff could have filed twenty such applications, it only filed five. Actually, Plaintiff was permitted under the statute to file, without leave of court, fifteen applications within the five-year period.[6] The number of applications filed, however, is not by itself probative on the question of whether the Plaintiff made "best efforts" under the contract. It is not necessarily the "best effort" or best legal strategy to submit the maximum number of fee applications permitted by law. Clearly, the question of how often to request that fees

---

6. The 1301 Associates' bankruptcy case was transferred to the U.S. Bankruptcy Court for the District of Columbia in June 1988 and was dismissed in January 1994. Thus, by the Court's estimate, Plaintiff was authorized, without leave of court, to file 15, not 20, interim fee applications. *See* 11 U.S.C. § 331.

**440**

be paid from an insolvent entity under the protection of the bankruptcy laws demands a measure of judgment and discretion on the part of counsel as to the likelihood of the bankruptcy court's granting the request. Judged in this light, there is no reasonable basis in the record from which to conclude that David & Hagner did not use its best efforts to recover its fees from the 1301 Associates' estate.

Counsel made five interim applications for fees over the course of five years, the last of which was dismissed as moot for lack of funds in the estate. (See, Order October 21, 1993, attached to the DHP Appendix at Tab 18.) The record demonstrates that in the case of each of the four interim applications that were considered, the bankruptcy court did not approve the full amount requested, but approved a portion, disapproved a portion, and deferred consideration on the balance until a later date. The record also demonstrates that the amount that could be drawn from the estate on a monthly basis to satisfy the fees allowed by the court was restricted on the basis of the cash flow allowances of the estate. These circumstances compel the conclusion that the submission of more fee applications would not have resulted in more reimbursement from the estate.

Plaintiff filed the First Interim Application For Compensation in the 1301 Associates case ("First Application") on December 15, 1988, requesting reimbursement for services rendered and expenses incurred during the period June 1, 1988 through June 30, 1988. (See, Pl.'s First Application, at 1, attached to the DHP Appendix at Tab 2.) The total request of $38,901.15 comprised of $35,836.00 in fees and $3,065.15 in expenses. (Id., at 6–7.)

Five months later, on May 22, 1989, with the First Application still pending, David & Hagner filed the Second Interim Application For Compensation ("Second Application"). (See, Second Application, at 7 and 35, attached to the DHP Appendix at Tab 4.) The Second Application covered the period from July 1, 1988 through December 31, 1988 and requested the allowance of $409,205.23 in fees and expenses. (Id., at 1, 34–35.) In this application, the Plaintiff requested "expedit-

ed treatment," (id., at 7), explaining that the "case has been pending in this District for over 10 months without any compensation having been awarded to legal counsel," and that the "unpaid accruals now pose a serious financial dilemma for David and Hagner, P.C." (Id.)

On June 21, 1989, the bankruptcy court convened a hearing and ruled on the First and Second Applications. (See, Transcript of Hearing and Transcript of Ruling In The First & Second Application, attached to the DHP Appendix at Tabs 7–8.) The bankruptcy court allowed approximately one-third or $145,000 of the two applications, disallowing $15,000, and deferring the balance for consideration at a later date, and provided that "the maximum monthly payment to David & Hagner shall not exceed the sum of $30,000.00...." (Transcript of Ruling, supra, at 1–2.)

In January 1990, Plaintiff filed the Third Interim Application For Compensation ("Third Application") covering the period January 1, 1989 through November 30, 1989. (See, Third Application, attached to the DHP Appendix at Tab 10.) The Third Application requested further consideration of the balance of $288,106.38 outstanding from the previous applications, and an award of $154,873.29 for fees and expenses as set out in the Third Application. (Id., at 19.) At a hearing in March 1990, the bankruptcy court allowed an interim payment of $25,000 and took the balance of the application under advisement. (See, DHP Appendix, Tab 13, at ¶ 8.) In a decision dated October 3, 1990, the bankruptcy court further allowed $125,000, disallowed $17,554.02, and deferred consideration of the balance of $275,425.65 comprised of the first three interim applications. (See, Decision Regarding Allowability of Interim Compensation and Expenses, attached to the DHP Appendix at Tab 11; and DHP Appendix, Tab 13, at ¶ 8.)

Approximately one month later, on November 13, 1990, the Plaintiff filed the Fourth Interim Application for Compensation ("Fourth Application") covering the period from December 1, 1989 through July 31, 1990, requesting the approval of additional fees and expenses of $162,238.61. (See,

Fourth Application, at ¶¶ 18–19, attached to the DHP Appendix at Tab 12.) At a hearing on December 18, 1990, the bankruptcy court took the Fourth Application under advisement. (*See,* DHP Appendix, Tab 13, at ¶ 12.) The bankruptcy court also set a hearing for January 31, 1991, that was continued to April 2, 1991. (*Id.*) On March 4, 1991, David & Hagner filed a Motion For Expedited Relief On Fourth Interim Application For Compensation And For Expedited Consideration of Deferred Compensation ("Motion For Expedited Relief") apprising the bankruptcy court of circumstances that "now make additional delays in payment from the Debtor extremely difficult for [David & Hagner]." [7] (*Id.*, at ¶ 16.) On April 2, 1991, the bankruptcy court announced its opinion on the allowance of fees and expenses under the Fourth Application. That opinion was memorialized in an Order, dated June 1, 1991, in which the bankruptcy court allowed $120,993.93 on the Fourth Application, disallowed $1,690 with prejudice and $14,566.13 without prejudice to application with greater substantiation, and deferred consideration of the remaining $24,988.55 pending a further hearing. The bankruptcy court also ordered that the amounts approved be payable in full "if sufficient funds are available after operational expenses for this purpose; provided, however, that if sufficient funds are not available, then the amounts approved herein shall be payable monthly by the Debtor as available out of net operating income, after operational expenses, up to the sum of $25,000 per month...." (Order Granting Compensation, June 1, 1991, attached to DHP Appendix at Tab 17.)

Finally, on May 7, 1991, Plaintiff filed its Fifth Interim Application For Compensation ("Fifth Application") covering August 1990 through February 1991 and requesting the allowance of an additional $144,514.34 in fees and expenses. (*See,* Fifth Application, at-tached to the DHP Appendix at Tab 16.) As noted earlier, the Fifth Application was dismissed as moot "with no funds currently being available for creditors, and there being no reason to decide any fee applications of professionals...." (Order, dated October 21, 1993, attached to the DHP Appendix at Tab 18.)

In the Court's view, the foregoing facts demonstrate conclusively that the Plaintiff used its best efforts to seek reimbursement from the 1301 Associates' estate. The Second Application, which was filed with the First Application still pending, included a request for "expedited treatment." Only one-third of the amounts requested in the first two applications, or $145,000, was approved by the bankruptcy court, and that amount could not be paid from the estate in installments greater than $30,000 per month. This decision was issued at the end of June 1989. It would therefore be five months, or December 1989, before any further funds could be obtained from the estate. Plaintiff filed its next fee application in January 1990. Again, the bankruptcy court allowed a sum less than the amount requested, adding to the balance from the previously deferred amounts. The bankruptcy court's decision on this Third Application was issued in October 1990. The Fourth Application, which was filed only one month later, was taken under advisement by the bankruptcy court. Plaintiff then filed a Motion For Expedited Relief. This was heard and decided in April 1991, with the bankruptcy court again approving only a portion of the application and deferring the balance. Finally, the Plaintiff filed the Fifth Application one month after the bankruptcy court's decision.

The foregoing demonstrates that despite the filing of interim fee applications by the Plaintiff soon after the disposition of each of the previously filed applications, and despite

---

7. These circumstances were described as follows: "the Law Firm has incurred a total of $876,964.44 in fees and expenses, for which the Court has authorized payments from the Debtor in the amount of $295,000, leaving a balance due from the Debtor of $581,964.44.... the outstanding, unpaid balance on fees and expenses ... for a firm of this size ... imposes a serious economic burden—in today's volatile market that burden is even greater. The situation is not improved by the fact that irregular payments from the Debtor have not kept pace with the legal services provided to the Debtor; as such it is likely the receivable balance will continue to increase due to the following anticipated work...." (*Motion For Expedited Relief,* at ¶ 17, attached to the DHP Appendix at Tab 13.)

the requests by the Plaintiff for the expedited treatment of its requests, the bankruptcy court never permitted the estate to pay out the full amount of any of the applications. Furthermore, although not detailed here, Plaintiff encountered the opposition of creditors in connection with each of its applications. Based on this record, there is no reasonable basis upon which to conclude that more funds could have been drawn from the debtor's estate than were obtained here. Accordingly, the Court finds that there is no genuine material dispute of fact relating to Plaintiff's obligation to use its "best efforts" in seeking reimbursement of fees from the 1301 Associates' bankruptcy estate, or any reasonable basis on which to conclude other than that Plaintiff complied with its duty under the Guarantee.

**Fee Limitation.** Defendants attempt to raise as an issue for trial that "Plaintiff violated the terms and conditions of the February 29 [sic], 1989 letter in that ... Plaintiff did not limit its activities to the approximate level of $15,000 per month...." (Defendants' Statement of Genuine Issues, *supra*, at ¶ 6.) The Court finds this alleged violation to be immaterial to the Plaintiff's summary judgment motion. First, in the Court's view, the terms in the letter pertaining to the alleged fee limitation are separate from, and not a precondition to the performance on the Guarantee. The February 24th letter was signed by Mr. Cohen with the specification that he "[t]he undersigned hereby accepts the terms set forth [in the letter] and, on behalf of Dover Historic Properties, Inc., expressly acknowledges and agrees to the guarantee set forth in Paragraph 4." (Letter from Kuney to Cohen of 2/24/89, *supra*, at p. 3.) Thus, the Guarantee was agreed to on behalf of DHP, separate from the acceptance by Mr. Cohen of the other terms in the letter. This is not to say that DHP was not also bound by Mr. Cohen's acceptance of those other terms, but that performance on the Guarantee in Paragraph 4 by DHP is not conditioned upon the other terms in the letter. In addition, the terms of the Guarantee are explicit. They pertain to *all* fees charged by David & Hagner and make no reference to a monthly fee limitation. Thus, the fee limitation issue is immaterial to whether DHP is obligated on the Guarantee.

Moreover, the alleged fee limitation contained in Mr. Kuney's letter does not by its own terms call for strict adherence. The letter states that the firm

> *would* limit its activities to the *approximate* level of $15,000 per month, *although we will be flexible in this regard.* This means that we would have to limit our involvement in any of the adversary proceedings and ask that Paul Rosen accept primary responsibility for these matters. Paul has already indicated that he is generally willing to do this, *although he has also indicated he wants help with the discovery process, which can also be costly.*

(Letter from Kuney to Cohen, *supra*, at ¶ 3 (emphasis added).) Not only is the language surrounding the alleged fee limitation conditional, in the grammatical sense, it also qualifies any implication that the $15,000 per month limitation can be achieved.

Finally, any doubt as to the flexibility of this limitation is wiped out by the March 6th response to the February 24th letter from Mr. Cohen. Mr. Cohen writes, referring to the legal needs of the two debtors: "[s]uch needs may exceed $15,000 in billable time per month." (Letter from Cohen to Kuney, *supra*, at ¶ 2.) For these reasons, the fee limitation issue is of no consequence.

**Liability of DAS.** Defendants dispute that DAS promised to pay David & Hagner for its fees and costs. (*See* Defs.' Statement of Genuine Issues, at ¶ 12.) Defendants have moved for summary judgment on this issue as well, and the Court grants their motion, finding no basis for liability against DAS.

Plaintiff contends that DAS "is liable not only as the general partner of the debtors, but *also* for its individual role in retaining David & Hagner." (Pl.'s Reply to Defs.' Opp'n to Mot. for Summ. J., at 18.) These contentions have no merit.

First, the Plaintiff correctly makes no mention of the Guarantee as a basis for DAS' liability. The Guarantee does not establish any obligation on the part of DAS. It specifically names DHP as the guarantor and was

executed and agreed to on behalf of DHP only.

Second, although the Plaintiff alleges in the Complaint and the Kuney Affidavit, and the Defendants concede, that Mr. Cohen represented DAS as well as the debtors and DHP in his negotiations for the retention of David & Hagner, this allegation by itself does not establish DAS' liability. The Kuney Affidavit fails to substantiate any separate agreement by DAS to cover the law firm's fees. The Affidavit states in Paragraph 6 that "Cohen, as agent for ... DAS ... requested that David & Hagner provide legal representation for [the debtors.]" (Kuney Aff., ¶ 6.) In the next paragraph, however, Mr. Kuney avers that "David & Hagner agreed to the representation of the Debtors based, in part, *upon DHP's promise* to guarantee payment of fees and expenses incurred by David & Hagner." (Kuney Aff., ¶ 7 (emphasis added).) This paragraph makes no mention of DAS.

Other averments relating to DAS in the Kuney Affidavit offer no support for the Plaintiff's position. Mr. Kuney states, for example, that "DHP and DAS authorized and encouraged David & Hagner to continue its representation of the debtors, promising to pay David & Hagner for its fees and costs pursuant to the guarantee," (Kuney Aff., ¶ 20), and that "Cohen and other representatives of DHP and DAS continually reaffirmed the DHP guarantee and promised, on behalf of DHP and DAS, to pay any outstanding fees...." (Kuney Aff., ¶ 35.) These statements do no more than purport to reaffirm DHP's obligation under the Guarantee. Moreover, in the Court's view, the statements do not satisfy the standard set out in the Federal Rules for successfully opposing summary judgment on a particular issue. The Federal Rules require that the party opposing a motion for summary judgment "set forth specific facts showing that there is a genuine issue for trial" and that such party "may not rest upon the mere allegations or denials of the adverse party's pleading."

Fed.R.Civ.P. 56(e). This Court finds that the Plaintiff's statements in the Kuney Affidavit do not set forth any facts beyond the bare allegations stated in the Complaint. (*See, id.*)

Finally, any separate agreement between DAS and the Plaintiff was required to be disclosed to the bankruptcy court in compliance with Bankruptcy Code Section 329 and was not. Therefore, any such agreement, if one existed, is unenforceable.[8]

■ **Guarantee of Approved Fees.** Citing excerpts from the Cohen Affidavit and the Schaeffer Deposition, the Defendants assert that they understood the Guarantee as a promise to advance funds to pay David & Hagner's fees and expenses pending approval by the bankruptcy court of the Plaintiff's fee applications. (Cohen Aff., ¶¶ 8–12. Schaeffer Dep., at 97, 103.) Mr. Cohen and Mr. Schaeffer each assert that the Guarantee only covered the fees approved by the bankruptcy court that remained unpaid to David & Hagner. (*Id.*) Based on these assertions, Defendants seek to preclude summary judgment for the Plaintiff on the issue of the meaning of the Guarantee's terms. This effort, however, is barred by the parole evidence rule.

■ It is well settled that "[w]here the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties. [citations omitted]. Only if the court determines as a matter of law that the agreement is ambiguous will it look to extrinsic evidence of intent to guide the interpretive process. *E.P. Hinkel & Co. v. Manhattan Co.* [506 F.2d 201, 204 (D.C.Cir 1974) ]; *Washington Metropolitan Area Transit Authority v. Mergentime Corp.,* 626 F.2d 959, 961 (D.C.Cir.1980). *See also* 1 J. & B. McBride & T. Touhey, Government Contracts § 2.10[3] (1978)." *NRM Corp. v. Hercules,*

---

8. The cases cited by Defendants for this proposition are numerous. *See, e.g., In re Senior G & A Operating Co.,* 97 B.R. 307 (W.D.La.Bankr.1989); *In re Automend, Inc.,* 85 B.R. 173 (N.D.Ga. Bankr.1988); *In re Damon,* 40 B.R. 367 (S.D.N.Y.Bankr.1984). These cases have no applicability to DHP's liability because the Court has found that Plaintiff fully complied with Section 329 in disclosing the Guarantee with DHP to the bankruptcy court.

**444**

*Inc.,* 758 F.2d 676, 681–682 (D.C.Cir.1985) (footnote omitted).

The Court finds that the terms of the Guarantee are unambiguous as a matter of law. Furthermore, the statements of Mr. Cohen and Mr. Schaeffer are clearly at odds with the terms of the Guarantee. They testify that the agreement only covered the fees approved by the bankruptcy court. The Guarantee states that DHP is liable for "[a]ny portion of this firm's bill which is not paid by the debtor's estate for any reason, *including court disapproval....*" (Letter from Kuney to Cohen, *supra,* at ¶ 4.) These terms could be no more explicit. Thus, the extrinsic evidence offered by the Defendants regarding the Guarantee is barred by the parole evidence rule. *See NRM Corp. v. Hercules, Inc., supra,* at 681–682.

### III. CONCLUSION

For the reasons stated, the Court finds that the Guarantee is an enforceable contract as to DHP and, therefore, denies the Defendants' motions for summary judgment, except as to the liability of DAS, and grants the Plaintiff's motion for summary judgment, except as to the liability of DAS.

An appropriate Order is attached.

### ORDER

Upon consideration of Defendant DHP, Inc.'s ("DHP") Motion For Summary Judgment, filed May 31, 1994, Defendant Dover Administrative Services, Inc.'s ("DAS") Motion For Summary Judgment, filed May 31, 1994, and the Plaintiff David & Hagner's Motion For Summary Judgment, filed June 14, 1994; all memoranda, pleadings, affidavits and exhibits filed in support of and opposition to the motions; the arguments of counsel made at the hearing on July 19, 1994; and the entire record of the case; it is by the Court this 23d day of August 1994

**ORDERED** that Judgment is awarded to the Plaintiff against Defendant DHP in the amount of $263,726.59, plus costs and prejudgment interest; it is further

**ORDERED** that DHP's Motion For Summary Judgment is DENIED, except that the Court GRANTS DHP's motion as to the

liability of DAS, as explained in the Court's Memorandum of this date; it is further

**ORDERED** that DAS' Motion For Summary Judgment is DENIED, except that the Court GRANTS DAS' motion as to the liability of DAS, as explained in the Court's Memorandum of this date; it is further

**ORDERED** that the Plaintiff David & Hagner's Motion For Summary Judgment is GRANTED, except that the Court DENIES the Plaintiff's motion as to the issue of DAS' liability, as explained in the Memorandum of this date.