FILED

FEB 28 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>U.S.A. DAWGS, INC.,<br><div align="right">Debtor.</div> | BAP No. NV-22-1212-LBC |
| DOUBLE DIAMOND DISTRIBUTION, LTD.,<br><div align="right">Appellant,</div><br>v.<br>GARMAN TURNER GORDON LLP,<br><div align="right">Appellee.</div> | Bk. No. 2:18-bk-10453-GS<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

APPEARANCES

David A. Riggi of Riggi Law Firm, on brief, for appellant Double Diamond Distribution, Ltd.; Talitha Gray Kozlowski and Teresa M. Pilatowicz of Garman Turner Gordon LLP, on brief, for appellee Garman Turner Gordon LLP.

Before: LAFFERTY, BRAND, and CORBIT, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

In early 2018, U.S.A Dawgs, Inc., the debtor in this case ("Debtor"), found itself in a difficult situation: it needed legal assistance to help it

1

dispose of assets, preferably through a chapter 11[1] bankruptcy case. But

Debtor was cash-strapped, and lacked any unencumbered assets from

which to pay a retainer or legal fees to competent bankruptcy counsel.

Double Diamond Distribution, Ltd. ("Double Diamond"), an affiliate of

Debtor[2] and appellant in this matter, rode, seemingly, to the rescue, and

agreed to provide Garman Turner Gordon LLP, ("GTG"), appellee and

Debtor's choice for chapter 11 counsel, with an ongoing monthly retainer,

and to guaranty the payment of GTG's fees and expenses incurred in

connection with Debtor's bankruptcy case.

The arrangement among Debtor, Double Diamond, and GTG was

properly documented in an engagement letter, and properly disclosed and

approved by the bankruptcy court via an order approving employment of

counsel. After Debtor's assets were sold in the bankruptcy case, GTG

applied for allowance and payment of its fees and expenses incurred via a

properly noticed and served application. The bankruptcy court entered an

order approving the application for compensation (the "Fee Order"), which

also provided that, consistent with the terms set forth in GTG's

employment application and the court's order approving the same, Debtor

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of
Bankruptcy Procedure, "Civil Rule" references are to the Federal Rules of Civil
Procedure, and "Local Bankruptcy Rule" references are to the Local Bankruptcy Rules
for the District of Nevada.

[2] Double Diamond is a Canadian company that develops and sells DAWGS
Brand footwear. Debtor was the United States distributor for DAWGS Brand footwear.

and Double Diamond would be jointly and severally liable for payment of the fees and expenses allowed.

At this point, our story takes an unhappy turn, as Double Diamond declined to pay GTG's allowed fees and expenses as previously agreed. Indeed, for much of the ensuing six years, GTG pursued enforcement of its allowed claim against Double Diamond in various collection actions in Canada (where Double Diamond apparently has assets). When Double Diamond had exhausted its ability to dodge GTG's collection efforts in Canada, it deployed a different strategy: it moved to reopen Debtor's bankruptcy and to seek relief from the Fee Order under Civil Rule 60(b), on the theory that the bankruptcy court lacked subject matter jurisdiction to enter an order determining liability of Double Diamond, and on the theory that the bankruptcy court's entry of the Fee Order infringed on Double Diamond's due process rights to the extent that it purported to hold Double Diamond liable for GTG's unpaid fees and expenses.

Double Diamond appeals the bankruptcy court's order denying its motion for relief from the Fee Order (the "Civil Rule 60(b) Motion"). Double Diamond reasserts before this Panel the arguments it urged in its Civil Rule 60(b) Motion, that the bankruptcy court lacked subject matter jurisdiction to enforce provisions in the employment agreement against Double Diamond. Double Diamond also raises notice and due process concerns related to counsel's application for approval of fees.

The bankruptcy court held that it had "arising in" jurisdiction over the dispute between Double Diamond and Debtor's counsel and that the procedural issues raised by Double Diamond did not amount to a constitutional due process violation. As a result, the bankruptcy court denied Double Diamond's request for relief under Civil Rule 60(b)(4).

We find no error in the bankruptcy court's analysis and, accordingly, we AFFIRM. We publish to address the multifaceted reach of a bankruptcy court's subject matter jurisdiction over a bankruptcy case, and with respect to the statutes governing estate counsel's employment and compensation under §§ 327-331.

**FACTS**

**A.    Prepetition Events**

Prior to the commencement of this case, Debtor, mired in over a decade of litigation with a competitor, sought to retain counsel to discuss, among other things, the possibility of filing for bankruptcy protection.[3] In furtherance of this goal, Steven Mann, as CEO of Debtor, and David Kaplan, as general counsel of Debtor, signed an initial engagement letter (the "Initial Letter") retaining GTG. The Initial Letter warned that, "[i]n the event that a bankruptcy filing becomes necessary, [GTG] may require that an additional retainer be paid."

---

[3] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1988); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Shortly thereafter, Debtor decided to file a chapter 11 petition. Here, Debtor encountered a hitch: as forewarned in the Initial Letter, GTG required a prefiling retainer. However, a secured lender was asserting a lien against substantially all of Debtor's assets. Debtor requested that GTG waive the prefiling retainer, but, because of Debtor's lack of unencumbered assets, GTG was concerned about Debtor's ability to fund its services to the estate. To resolve this issue and allow Debtor to proceed with its bankruptcy filing, Double Diamond, an affiliate of Debtor for which Mr. Mann also served as President and CEO, agreed that it would: (i) pay $10,000 per month into GTG's client trust account during the life of Debtor's bankruptcy case; and (ii) guaranty payment of all of GTG's fees and costs incurred in connection with Debtor's bankruptcy case.

To memorialize this agreement, GTG sent another engagement letter to Mr. Mann and Mr. Kaplan (the "Engagement Agreement"), incorporating Double Diamond's obligations identified above. The Engagement Agreement also noted that GTG's fees and costs would be subject to approval by the bankruptcy court. Mr. Mann twice signed the Engagement Agreement: first, in his capacity as President and CEO of Debtor and, second, in his capacity as President and CEO of Double Diamond.

B.     **Debtor's Bankruptcy Filing and Employment of GTG**

On January 31, 2018, Debtor filed a chapter 11 petition signed by Mr. Mann as President and CEO of Debtor. The following day, Debtor filed an

application to employ GTG as general bankruptcy counsel for Debtor (the "Application to Employ"). Through the Application to Employ, Debtor requested that the court approve, pursuant to §§ 327, 328(a), 330, and 331, "the retention and compensation of GTG as its attorneys. . . ." The Application to Employ also set forth the proposed scope of GTG's services for the estate, all of which involved matters particular to a chapter 11 bankruptcy case.

In a section entitled "Compensation," Debtor outlined the agreement between GTG, Debtor, and Double Diamond as follows:

> As set forth in the [Engagement Agreement], Double Diamond . . ., an affiliate of Debtor, has guaranteed payment of all GTG's fees and expenses incurred in connection with the Chapter 11 Case, and agreed to pay, commencing February 10, 2018 and on the first day of every month thereafter, $10,000 to GTG to be held in retainer and applied to fees and expenses approved by this Court after application pursuant to Sections 330 and 331.

Mr. Mann signed a declaration in support of the Application to Employ. In addition, the Application to Employ was served on Mr. Kaplan on behalf of Double Diamond. Double Diamond did not oppose the Application to Employ.

The bankruptcy court entered an order approving the Application to Employ (the "Order Employing GTG"). In the Order Employing GTG, the bankruptcy court reiterated that GTG was retained "subject to the terms of the Engagement Agreement" and would be compensated "in accordance with the procedures set forth in Sections 330 and 331, and any other

6

applicable procedures and orders of the Court." Double Diamond did not appeal the Order Employing GTG or otherwise move for relief from the Order Employing GTG.

**C.  The Sale of Debtor's Assets and GTG's Fee Application**

Later, Debtor filed a motion for, among other things, the sale of virtually all of its assets by auction (the "Sale Motion"). The Sale Motion was served on Double Diamond, Mr. Mann, and Mr. Kaplan. Double Diamond was actively involved in the sale of Debtor's assets. Eventually, the bankruptcy court entered an order granting the Sale Motion.

Thereafter, GTG filed its first and final application for allowance of fees and reimbursement of costs (the "Fee Application"). In the Fee Application, GTG reiterated its agreement with Double Diamond, again quoting the language from the Engagement Agreement regarding Double Diamond's obligations to pay $10,000 per month to GTG and guaranty GTG's fees and costs. In its concluding prayer for relief, GTG requested that the bankruptcy court "enter an order in the form attached hereto as Exhibit '4,' thereby granting" the Fee Application. Exhibit 4, in turn, proposed incorporation of the following findings into the court's order allowing fees and costs:

> This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

7

> A reasonable opportunity to object and to be heard with respect to the Application and the relief requested therein has been given to Debtor, Double Diamond, the Office of the United States Trustee, and all other interested persons and entities.
>
> . . .
>
> Through its execution of the Engagement Letter, Double Diamond unconditionally guaranteed the payment of all fees and expenses incurred by GTG in its representation of Debtor in the Chapter 11 Case.
>
> Pursuant to the terms of the Engagement Letter, Debtor and Double Diamond are jointly and severally liable for payment of the Allowed Fees and Costs to GTG.

The proposed order also included the following decretal language:

> The Allowed Fees and Costs are immediately due and payable to GTG.
>
> Debtor and Double Diamond are jointly and severally liable for the payment of the Allowed Fees and Costs to GTG.

GTG served the Fee Application, and all attached exhibits, on Double Diamond, Mr. Mann, and Mr. Kaplan.

Concurrently with the Fee Application, GTG filed a three-page notice of the Fee Application (the "Notice of Fee Application"). The Notice of Fee Application also was served on Double Diamond, Mr. Mann, and Mr. Kaplan. On the first page of the Notice of Fee Application, GTG stated that it sought entry of an order that provided, in relevant part, that "the Allowed Fees and Costs are immediately due and payable to GTG" and "Debtor and Double Diamond Distribution Ltd. are jointly and severally liable for the payment of the Allowed Fees and Costs to GTG." The Notice

8

of Fee Application also informed any parties that wished to oppose such relief to file an opposition no later than 14 days before the hearing date of the Fee Application.

Double Diamond did not oppose the Fee Application. Instead, Debtor's secured lender filed an opposition arguing that GTG could not collect its fees and costs from its collateral (i.e., the thoroughly encumbered assets of Debtor's estate) and that GTG should collect directly from Double Diamond. Double Diamond did not file a response to this opposition.

On August 22, 2018, after a hearing on the matter, the bankruptcy court entered the Fee Order, approving GTG's request for payment of fees and reimbursement of expenses. The bankruptcy court incorporated the proposed findings and decretal language quoted above into the Fee Order. Double Diamond did not appeal the Fee Order.

Around this time, Debtor, via new counsel, also filed a motion to disburse proceeds from the sale of Debtor's assets. The motion to disburse was supported by a declaration by Mr. Mann, in which Mr. Mann stated that "[a]ll or substantially all of the Debtor's assets were sold and transferred per the Sale Order" and that "Debtor has little, if anything, in property of the estate that is of value. . . ."

**D.    Double Diamond's Civil Rule 60(b) Motion**

GTG spent several years attempting to collect fees and costs from Double Diamond, mainly by prosecuting several Canadian proceedings in pursuit of Double Diamond's assets in that country. After the Canadian

proceedings concluded in favor of GTG, Double Diamond returned to the bankruptcy court.

On March 4, 2022, approximately three and a half years after entry of the Fee Order, Double Diamond filed the Civil Rule 60(b) Motion. In the Civil Rule 60(b) Motion, Double Diamond contended that: (i) the Fee Order is void because the bankruptcy court lacked subject matter jurisdiction to determine Double Diamond jointly and severally liable for immediate payment of GTG's fees and costs; (ii) Double Diamond was a guarantor, not a surety, such that the bankruptcy court could not order Double Diamond to "immediately" pay GTG's fees and costs or hold Double Diamond jointly and severally liable with Debtor; and (iii) the proposed order improperly requested relief beyond what was requested in the Fee Application.

On October 7, 2022, the bankruptcy court issued its memorandum of decision regarding the Civil Rule 60(b) Motion. In the memorandum of decision, the bankruptcy court held that: (i) the Fee Order is not void for lack of subject matter jurisdiction because the bankruptcy court had "arising in" and "related to" jurisdiction over the dispute; and (ii) Double Diamond failed to raise the remainder of its arguments under Civil Rule 60(b) within a reasonable time, as required by Civil Rule 60(c). Consequently, the bankruptcy court entered an order denying the Civil Rule 60(b) Motion. Double Diamond timely appealed.

## JURISDICTION

As discussed below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in denying Double Diamond's Civil Rule 60(b) Motion under Civil Rule 60(b)(4)?

2. Did the bankruptcy court err in denying Double Diamond's Civil Rule 60(b) Motion under Civil Rule 60(b)(6)?

## STANDARDS OF REVIEW

We review the denial of a motion under Civil Rule 60(b)(4) de novo. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002). This includes subject matter jurisdictional challenges, *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995), and due process arguments raised under Civil Rule 60(b)(4). *In re La Sierra Fin. Servs., Inc.*, 290 B.R. at 726 (citing *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202, 206 (9th Cir. BAP 1996))("Whether a person's due process rights have been violated is a mixed question of law and fact, which is reviewed de novo."). De novo review means that we review the matter anew, as if the bankruptcy court had not previously decided it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

The Panel otherwise reviews a trial court's decision to deny a Civil Rule 60(b) motion, including arguments raised under Civil Rule 60(b)(6), for abuse of discretion. *Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1167 n.7 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc*. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

On appeal, Double Diamond relies primarily on its argument that, pursuant to Civil Rule 60(b)(4), the provisions in the Fee Order imposing liability on Double Diamond are void because the bankruptcy court lacked subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

"Like all federal courts, the jurisdiction of the bankruptcy courts is created and limited by statute." *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1284-85 (9th Cir. 2013) (citing

12

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). For the purposes of bankruptcy jurisdiction, that statute is 28 U.S.C. § 1334, through which Congress granted bankruptcy courts, by referral from district courts, "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

As is evident from the language of this statute, bankruptcy subject matter jurisdiction differs from other types of federal subject matter jurisdiction, and specifically, jurisdiction in Article III courts to dispose of litigation matters. Specifically, bankruptcy courts have subject matter jurisdiction over both "cases" and "proceedings."

In order fully to comprehend the nature and scope of bankruptcy subject matter jurisdiction, one must understand and appreciate this express distinction between jurisdiction over bankruptcy **cases**, which is original and exclusive (i.e., absolute), and bankruptcy **proceedings**, which is original but not exclusive, and which is a function of the relationship between proceedings in bankruptcy (i.e., via "contested matters", or motion practice, or adversary proceedings, or lawsuits) and the overall goal and purpose of a bankruptcy case.

The term bankruptcy "case" refers to the bankruptcy petition itself, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 n.38 (3d Cir. 2004), *as amended*, and is "the basis for taking control of all pertinent interests in property,

dealing with that property, determining entitlements to distributions, the procedures for administering the mechanism, and discharging the debtor." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 908 (9th Cir. BAP 1999). In contrast, "[e]ssentially all litigation within a bankruptcy case is a 'civil proceeding.'" *Id.*

More fundamentally, the fact that the statute expressly recognizes the separate concept of a bankruptcy case, within which the parties' rights, and the ultimate success or failure of the process, are determined by the outcomes of those civil proceedings, highlights the fact that in crafting a system of bankruptcy, and in enacting a Bankruptcy Code, Congress created a system that would facilitate societal goals that would extend beyond the outcome of any particular piece of litigation therein— facilitating a process, overseen by the bankruptcy courts, that would lead, where possible, to a fair liquidation or a feasible reorganization.

To be sure, in the course of a bankruptcy case, bankruptcy courts resolve disputes of fact and law via civil proceedings in a manner entirely consistent with typical judicial functions. But that overall objective of achieving a fair liquidation or a feasible reorganization gives the bankruptcy system, and the bankruptcy courts that preside over that process, an additional purpose that is unique in the federal judiciary.

In this context, it is apparent that the basis and scope for the jurisdictional grant over proceedings in bankruptcy cases depends on the relationship between those proceedings and the overall objective of

14

achieving a readjustment of the debtor-creditor relationship. As articulated in 28 U.S.C § 1334, the bankruptcy courts exercise jurisdiction over matters that (i) "arise under" the Code (i.e., where the Code creates or determines the cause of action); (ii) "arise in" a bankruptcy case (i.e., the proceeding would not exist outside of the bankruptcy case); or (iii) are "related to" a bankruptcy case (i.e., the outcome of the proceeding could conceivably have an effect on administration of the estate). *In re Wilshire Courtyard*, 729 F.3d at 1285-87.

As we explain more fully below, we agree with the bankruptcy court's determination that this matter "arose in" and was "related to" a bankruptcy case, and could affirm the bankruptcy court's decision on those bases alone. But we further conclude, based on the bankruptcy court's jurisdiction over matters emanating from the overall reorganization process, that there is ample basis to determine that the bankruptcy court had "arising under" jurisdiction over this matter as well.

With this context, we believe that the bankruptcy court's duty, under §§ 327-331, to scrutinize employment and compensation of counsel, takes on particular practical importance, and jurisdictional significance. Because corporate debtors, like Debtor, are required to have counsel,[4] the filing of a corporate chapter 11 petition immediately triggers the bankruptcy court's obligations under these statutes.

---

[4] "Any corporation, partnership, limited liability company, trust, or other non-individual debtor must be represented by[] an attorney." Local Bankruptcy Rule 9010.

15

The bankruptcy court's authority over employment and compensation of estate counsel safeguards the continuing integrity of the bankruptcy case. The court's obligations include the duty to assess whether counsel is "disinterested," a concept that is specific to bankruptcy and distinct from nonbankruptcy conflict of interest laws. § 327(a).[5] This analysis requires bankruptcy courts to analyze and, if appropriate, to approve **both** Debtor's selection of counsel **and** the terms of payment to counsel in accordance with the particular mandates of the Code.

As it relates to this matter, a bankruptcy court's assessment, oversight, and enforcement of funding arrangements between estate counsel and nondebtor third parties is a central and necessary part of the court's duties under §§ 327-331. Given this framework, the bankruptcy court did not err in holding that it had "arising in" and "related to" jurisdiction over the dispute between GTG and Double Diamond, as further discussed in sections A.1 and A.3. In fact, the instant proceeding is so fundamental to the bankruptcy court's authority over counsel that the court also had "arising under" jurisdiction, as discussed in A.2. Nor did the bankruptcy court err in denying Double Diamond's additional requests for relief under Civil Rule 60(b)(4) and (b)(6), as discussed in sections B and C.[6]

---

[5] Section 101(14) defines a "disinterested person" for purposes of the Code.

[6] Before the bankruptcy court, Double Diamond argued that it was entitled to relief under all subsections of Civil Rule 60(b). However, Double Diamond currently presents arguments under Civil Rules 60(b)(4) and (b)(6). As such, the Panel will only address those subsections.

**A.  The bankruptcy court did not err in holding that it had subject matter jurisdiction over this matter.**

A "court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment is void." Civil Rule 60(b)(4).[7] The U.S. Supreme Court has held that only two infirmities warrant relief under Civil Rule 60(b)(4): where a judgment is premised either on (i) a certain type of jurisdictional error, or (ii) a violation of due process that deprives a party of notice or the opportunity to be heard. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citing *Boch Oldsmobile, Inc.*, 909 F.2d at 661). "Federal courts considering [Civil] Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).

**1.  The bankruptcy court had "arising in" jurisdiction over this dispute.**

Double Diamond does not dispute that issues related to GTG's employment and compensation under §§ 327-331 are core proceedings over which the bankruptcy court had subject matter jurisdiction. That conclusion is uncontroversial. Matters concerning the administration of the estate are considered "core" because they "arise under" the Code or "arise

---

[7] "[R]elief from a void judgment has no time limitations." *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990).

in" a bankruptcy case. *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995). "Congress has left no doubt as to what matters concern case administration for it subtitled Chapter 3 of title 11 'Case Administration.'" *In re GHR Energy Corp.*, 60 B.R. 52, 61 (Bankr. S.D. Tex. 1985). Sections 327-331, which govern the employment and compensation of counsel representing the estate, are included in that chapter.

Nevertheless, Double Diamond contends that, despite being a signatory to the very same Engagement Agreement over which the bankruptcy court undoubtedly had subject matter jurisdiction, Double Diamond's obligations under the Engagement Agreement constituted a separate guaranty agreement over which the bankruptcy court lacked even "related to" subject matter jurisdiction.

This Panel disagrees. A proceeding "arises in" a case under the Code "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) (citation omitted).

The bankruptcy court did not err in holding that the current dispute "arose in" Debtor's bankruptcy case. The Engagement Agreement at issue is for retention of chapter 11 counsel in accordance with the strict mandates set forth in §§ 327-331. This fact, standing alone, demonstrates "arising in"

18

jurisdiction; such an agreement could not exist anywhere outside of a chapter 11 case.

Additionally, Debtor's bankruptcy case would not exist without Double Diamond's agreement to fund GTG. The record reflects that GTG required the monthly deposits and the guaranty before agreeing to represent Debtor, and that Debtor did not otherwise have the means to fully fund bankruptcy counsel. As such, the specific provisions binding Double Diamond enabled Debtor to pursue bankruptcy protection in the first place.[8]

Double Diamond mainly argues that, because guaranty/suretyship agreements **in general** exist outside of bankruptcy, this matter could not "arise in" bankruptcy. This interpretation misconstrues binding Ninth Circuit law. *See Harris v. Whitman (In re Harris)*, 590 F.3d 730 (9th Cir. 2009).

In *Harris*, after the debtor filed a chapter 7 case, the chapter 7 trustee entered into an agreement assigning the right to prosecute a fraudulent conveyance claim against the debtor and his wife to an unsecured creditor. 590 F.3d at 734-35. Later, the debtor, his wife, the trustee, and the unsecured creditor entered into a settlement agreement resolving the disputes between the parties. *Id.* Through the agreement, the trustee agreed to sell certain assets for the benefit of the estate and to refrain from selling

---

[8] Moreover, GTG explicitly set forth the scope of its proposed employment in its Application to Employ. GTG's detailed outline of the scope of its employment exclusively covered matters involving the administration of Debtor's bankruptcy case, i.e., work that could not happen anywhere outside of bankruptcy.

other assets. *Id.* The bankruptcy court approved the settlement agreement. *Id.*

Almost three years later, the debtor sued the trustee, the unsecured creditor, and the unsecured creditor's attorneys in California state court, asserting several California causes of action related to the settlement agreement. *Id.* at 735-36. The trustee removed the case to bankruptcy court, which dismissed the debtor's complaint in its entirety. *Id.*

On appeal, the Ninth Circuit Court of Appeals held that the bankruptcy court had "arising in" jurisdiction over the lawsuit:

> Because the plaintiff sued the bankruptcy trustee for the trustee's conduct in administering the bankruptcy estate, the state law claims arose in the bankruptcy case and were subject to federal jurisdiction.

> Here, although this is a state law cause of action, Harris's claim arose in his bankruptcy case because it could not exist independently of his bankruptcy case. Harris alleged that. . . the bankruptcy trustee[] breached the Settlement Agreement by selling bankruptcy estate assets that she had agreed not to sell, in exchange for [the unsecured creditor's] release of his claims against the estate and his assumption of other estate liabilities that Harris alleges were already released by the Settlement Agreement. . . . Therefore, Harris's state law contract claim arose in his bankruptcy case, and it could be referred to the bankruptcy court.

*Id.* at 737-38.

Of course, settlement agreements generally can and do exist outside of bankruptcy. Nevertheless, despite the fact that the debtor was suing

20

nondebtor entities for, among other things, breach of a contract under state law, the Ninth Circuit held that the particular type of contract at issue – i.e., a settlement agreement regarding administration of the estate that was approved by the bankruptcy court – could not exist outside of bankruptcy.

Similarly, while guaranty agreements can and do exist outside of bankruptcy, the Engagement Agreement, including the guaranty and funding provisions therein, could not. Like in *Harris*, the Engagement Agreement involved administration of the estate, namely, the employment and compensation of counsel under §§ 327-331. Because this employment and compensation scheme cannot exist outside of bankruptcy, the current dispute over the Fee Order "arose in" Debtor's bankruptcy case. Consequently, the bankruptcy court did not err in holding that it had "arising in" jurisdiction.

### 2. The bankruptcy court had "arising under" jurisdiction over this dispute.

Although both the parties and the bankruptcy court focus on "arising in" jurisdiction, we believe the current dispute also "arises under" the Code. "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d at 1131 (citations omitted).

As noted above, the employment and compensation system set forth in §§ 327-331 is specific to bankruptcy – the comprehensive requirements

21

governing estate counsel set forth in those statutes do not exist anywhere else. It was these statutes that supplied the requirements for approval of the Engagement Agreement, both as concerned approval of GTG as counsel **and** approval of the fee arrangement involving Double Diamond. It was also these statutes that provided the standard for approval or denial of counsel's fees, including whether GTG was entitled to receive funds from Double Diamond.

Although Double Diamond attempts to extricate itself from the bankruptcy court's authority over GTG as estate counsel, the provisions obligating Double Diamond equally implicated the court's statutory authority under §§ 327-331. Pursuant to these statutes, the bankruptcy court had the authority to deny approval of the Engagement Agreement based on Double Diamond's inclusion in that agreement. For example, the court could have found that GTG was not "disinterested" for purposes of the Code based on the funding it was receiving from Double Diamond. Notwithstanding the parties' agreement to the contrary, the bankruptcy court also retained the authority to deny all or part of counsel's fees and prevent Double Diamond from paying GTG.

Binding Ninth Circuit authority, Congress's explicit grant of jurisdiction to bankruptcy courts, and policy also serve to bolster this holding. The Ninth Circuit Court of Appeals' decision in *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995), is particularly informative. In *Park-Helena*, the debtor's general

bankruptcy counsel received a retainer from the debtor's president, i.e., a nondebtor third party, in contemplation of the debtor's chapter 11 bankruptcy filing. 63 F.3d at 879. However, in its application for employment, counsel stated that it received the retainer from the debtor. *Id.* After the true source of the retainer came to light, the bankruptcy court held that counsel's failure to make complete disclosures warranted denial of all of counsel's fees. *Id.* at 880.

The Ninth Circuit affirmed. *Id.* at 879. In support, the circuit first discussed the bankruptcy court's "policing responsibilities" under the Code:

> The bankruptcy court must ensure that attorneys who represent the debtor do so in the best interests of the bankruptcy estate. The court must ensure, for example, that the attorneys do not have interests adverse to those of the estate, 11 U.S.C. § 327, that the attorneys only charge for services that benefit the estate, and that they charge only "reasonable" fees, 11 U.S.C. § 329(b). To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees. *See* 11 U.S.C. § 329; Fed. R. Bankr. P. 2014 & 2016.

*Id.* at 880 (internal citations omitted). Because counsel failed to disclose the source of its retainer in accordance with § 329, the circuit held that the bankruptcy court had the authority to deny all of counsel's fees, even if such a result was "harsh." *Id.* at 881. The circuit further held that § 327 also empowered the bankruptcy court to deny counsel's fees, because that

statute "assists the court in ensuring that the attorney has no conflicts of interest and is disinterested." *Id.*

As such, the circuit implicitly held that the bankruptcy court had jurisdiction over counsel's recovery of fees and costs despite the fact that a nondebtor third party funded counsel's retainer. This holding is in line with Congress's grant of jurisdiction to bankruptcy courts under 28 U.S.C. § 1334; Congress evidently believed the bankruptcy court's role under § 327 to be so important that it explicitly conferred on bankruptcy courts "**exclusive** jurisdiction . . . over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." 28 U.S.C. § 1334(e)(2) (emphasis added); *see also In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624 (Bankr. E.D. Cal. 2012) (the bankruptcy court "has original and exclusive jurisdiction over the employment of counsel, their compensation, and their disclosure obligations, pursuant to 28 U.S.C. § 1334(e)(2). . . .").

Significantly, the breadth of the holding in *Park-Helena* demonstrates the centrality of §§ 327-331 to the integrity of the bankruptcy system. *See also Land W., Inc. v. Coldwell Banker Com. Grp., Inc. (In re Haley)*, 950 F.2d 588, 590 (9th Cir. 1991) ("Control by the bankruptcy court is necessary to enable the court to contain the estate's expenses and avoid intervention by unnecessary participants."). The bankruptcy court's broad and exclusive jurisdiction over issues that implicate estate counsel's employment and compensation has been recognized in other contexts as well. For instance,

after assessing the history of Congress's grant of exclusive jurisdiction to bankruptcy courts, one court held that it could not delegate any disputes under §§ 327-331 to arbitration for resolution:

> [D]isputes over fees in bankruptcy cases fall within the extremely narrow category of disputes which Congress probably never envisioned being delegated to nonjudicial entities for resolution. Under the Bankruptcy Act of 1898, the Supreme Court held that the jurisdiction of the bankruptcy court over fees is "paramount and exclusive," Congress having asked for "the informed judgment of the bankruptcy court, not another court or agency." *Brown v. Gerdes*, 321 U.S. 178, 183–184, 64 S.Ct. 487, 88 L.Ed. 659 (1944). Nothing in the 1978 Code or amendments thereto indicates that Congress was unaware of this principle or that it intended to change it. As was stated in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), the 1978 Code should not be interpreted "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." No such legislative history supports the delegation of the court's fee-setting responsibilities. . . .

*Home Express, Inc. v. Alamo Grp., LLC (In re Home Express, Inc.)*, 226 B.R. 657, 659 (Bankr. N.D. Cal. 1998). Considering this history, the *Home Express* court distinguished between "ordinary contract dispute[s] between the debtor and another party (whether it be core or noncore)" and "disputes involving § 327 through 330," holding that "bankruptcy policy must hold sway over the policies of the Federal Arbitration Act" in proceedings regarding the latter. *Id.*

More recently, a bankruptcy court dismissed an adversary proceeding filed by special counsel employed by the estate on the basis that counsel's complaint was preempted by the Code's compensation statutes. *RFK Glob., PLLC v. Nuti Hart LLP (In re Sunergy Cal., LLC)*, 651 B.R. 781 (Bankr. E.D. Cal. 2023). There, after the chapter 11 trustee objected to special counsel's fee application, special counsel sued the trustee on several common law theories, demanding damages measured by any fees the court disallowed plus punitive damages. *Id.* at 784. After noting that "[t]he fee application process established by Congress serves as the exclusive remedy for professionals employed by an estate," the bankruptcy court held that special counsel's suit was preempted by the Code:

> The above-described comprehensive Congressional scheme for employing and compensating professionals in bankruptcy cases is intended to provide mandatory standards for compensation awards.

> To permit the common-law causes of action that [special counsel] alleges in its adversary proceeding complaint would be to "erect an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 784, 789 (quoting *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013) (en banc)); *see also McCutchen, Doyle, Brown & Enersen v. Off. Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 212 (9th Cir. BAP 1994) (holding that the Code precludes fee awards for services performed on

26

behalf of a bankruptcy estate based on state law theories not provided for by the Code).

In light of the above, the dispute between GTG and Double Diamond falls squarely within the bankruptcy court's jurisdiction over §§ 327-331. It is the bankruptcy court, and no other court, that has the ability and obligation to parse whether **any** part of counsel's employment and compensation is adverse to the bankruptcy estate and renders counsel "disinterested" under the Code. This obligation to assess the Engagement Agreement for compliance with the Code **necessarily** includes assessment of any other parties to the agreement, and especially parties that fund estate counsel and guaranty estate liabilities.

A holding that the bankruptcy court lacks subject matter jurisdiction over the portions of the Engagement Agreement involving Double Diamond would seriously undermine the bankruptcy court's authority under §§ 327-331. For example, a nondebtor entity in Double Diamond's shoes could unfairly influence debtor's counsel by either increasing or withholding monthly payments to counsel. In such a scenario, Double Diamond's proposed limits on the bankruptcy court's jurisdiction would leave the Code's otherwise broad and powerful disclosure and compensation statutes utterly toothless. To wit, the bankruptcy court would have no jurisdiction to enforce its own order approving employment under §§ 327-329, or the flow of funds (or lack thereof) to debtor's counsel under §§ 330-331. Given that the mandates of §§ 327-331

occur exclusively in the context of bankruptcy, it stands to reason that a dispute involving these statutes, whether or not such a dispute involves a nondebtor guarantor, also "arises under" §§ 327-331.

Double Diamond voluntarily entered into an agreement governing bankruptcy estate counsel's employment and compensation under §§ 327-331. In so doing, Double Diamond brought the current dispute over the Engagement Agreement within the bankruptcy court's "core" jurisdiction.

### 3. The bankruptcy court had "related to" jurisdiction over this dispute.

An action is "related to" a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact the administration of the bankruptcy estate. *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Although the Panel holds that the bankruptcy court had "arising under" and "arising in" jurisdiction, the Panel will briefly address Double Diamond's contention that the bankruptcy court lacked even noncore, "related to" jurisdiction. "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp.*, 514 U.S. at 308. Thus, "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a))

28

jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Id.*

Double Diamond contends that, because the estate was insolvent when GTG filed the Fee Application, Double Diamond's failure to pay GTG would have no impact on the estate; in other words, either way, the estate would not be the entity satisfying GTG's administrative expenses. But this is too narrow a view of a bankruptcy court's "related to" jurisdiction. At any point during the bankruptcy case, Double Diamond's breach of the Engagement Agreement could have increased the administrative expenses of the estate. In addition, unlike the cases referenced by Double Diamond where the obligation to fund counsel was exclusively placed on a third party, here, the estate also remained liable for payment of GTG's fees and expenses under the Engagement Agreement. As such, Double Diamond's obligations stemming from the Engagement Agreement could have "alter[ed] the debtor's rights, liabilities, options or freedom of action" in such a way as to impact administration of the bankruptcy estate. *In re Fietz*, 852 F.2d at 457 (citing *Pacor*, 743 F.3d at 994).[9]

---

[9] Moreover, without the Engagement Agreement and Double Diamond's involvement, Debtor would not have bankruptcy counsel at all. As noted above, corporate debtors are required to have counsel or risk dismissal of their case. *See* Local Bankruptcy Rule 9010. That the existence of Debtor's bankruptcy case hinged on the Engagement Agreement also signals that this issue is "related to" Debtor's bankruptcy case.

Ultimately, Double Diamond mainly stresses the fact that it was not a creditor in Debtor's case. However, this assertion conflates subject matter jurisdiction with personal jurisdiction, as more fully discussed below, and contradicts the established test for subject matter jurisdiction, which requires only that the matter impact administration of the estate. As discussed at length above, employment and compensation of Debtor's counsel concerns administration of the estate. Thus, whether or not it was a creditor, Double Diamond's involvement in this case impacted a core, administrative function of the bankruptcy courts.

Given how intertwined Double Diamond's obligations under the Engagement Agreement were to both employment and compensation of GTG, it follows that these provisions could and did have a "conceivable effect on administration of Debtor's bankruptcy case." As such, the bankruptcy court also had "related to" jurisdiction over this matter.

### 4. Double Diamond's arguments are not relevant to the issue of subject matter jurisdiction.

Double Diamond frames many of the issues it raises on appeal as indicative of the bankruptcy court's lack of subject matter jurisdiction. However, the arguments set forth by Double Diamond do not actually implicate the bankruptcy court's **subject matter** jurisdiction at all.

First, Double Diamond asserts that the bankruptcy court lacked the "power" to order payment of administrative fees and expenses from any

source other than the bankruptcy estate.[10] Although couched in jurisdictional terms, this argument is not jurisdictional. "Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power. . . is the scope and forms of relief the court may order in an action in which it has jurisdiction." *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 624 (9th Cir. 1989).

On this point, the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), is instructive. In *Stern*, the Court had to decide, among

---

[10] Because the Panel holds that the bankruptcy court had "arising under" and "arising in" jurisdiction, as discussed above, this matter was "core." *See Stern v. Marshall*, 600 F.3d 1037, 1053 (9th Cir. 2009) (core proceedings consist of all actions "arising under" title 11 and also those "arising in" a case under title 11). Thus, the bankruptcy court properly entered a final order against Double Diamond.

However, even if the bankruptcy court only had noncore, "related to" jurisdiction, Double Diamond provided implied consent to entry of the Fee Order by the bankruptcy court. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684–85 (2015). For all the reasons explained in this Opinion, Double Diamond had notice of all relevant proceedings before the bankruptcy court, voluntarily participated in the bankruptcy case, and elected to become a signatory to the Engagement Agreement approved by the bankruptcy court in accordance with the Code. Until the filing of the Civil Rule 60(b) Motion, Double Diamond did not object to entry of final orders by the bankruptcy court.

Because Civil Rule 60(b)(4) does not cover defects based on a court's lack of "power," the bankruptcy court was well within its discretion to hold that Double Diamond's request for reconsideration based on any such lack of "power" was untimely, as more fully discussed below. *See* Civil Rule 60(c) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1),(2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding.").

other things, whether the bankruptcy court had statutory and constitutional authority to enter a final order on a debtor's counterclaim against an individual that filed a proof of claim against debtor's estate. *Id.* at 471-72. Although the Court held that the bankruptcy court lacked constitutional authority to enter a final order disposing of the counterclaim, the Court rejected the claimant's argument that the bankruptcy court lacked subject matter jurisdiction over the suit. *Id.* at 478-80.

> [W]e agree with [the debtor] that § 157(b)(5) is not jurisdictional, and that [the claimant] consented to the Bankruptcy Court's resolution of his defamation claim. Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," *Henderson v. Shinseki,* 562 U.S. 428, 434, 131 S.Ct. 1197, 1201–03, 179 L.Ed.2d 159 (2011), we are not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such. See generally *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character").
> . . .
> The statutory context also belies [the claimant's] jurisdictional claim. Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction. See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in noncore case).

*Id.* at 479-80.

As in *Stern*, Double Diamond's various arguments regarding the bankruptcy court's "power" are distinct from the question of whether the bankruptcy court had subject matter jurisdiction. The cases referenced by Double Diamond, all of which discuss a court's power, are similarly inapposite. For instance, in *ThreeStrands by Grace, LLC*, No. 12-00756-JKC-11, 2012 WL 1986434, at *6 (Bankr. S.D. Ind. June 1, 2012), the bankruptcy court assessed whether an attorney who received a prepetition flat fee retainer from the debtor had to apply for approval of fees under § 330. Although the court held that the application process applies only when professionals seek compensation from the estate, the court also stated that it maintained the "ability to review professional services for reasonableness" and to adjust the amount of fees under §§ 328(a) and 329(b). *Id.* As such, the court never held that it lacked subject matter jurisdiction over the issues in that case.

Similarly, in *McDonald Bros. Construction, Inc.*, 114 B.R. 989 (Bankr. N.D. Ill. 1990), although the bankruptcy court ultimately held that the fee application procedures under § 330 only apply when a professional seeks compensation from the estate, the court also noted that:

> Most of the professionals retained by a debtor in bankruptcy may receive compensation without court scrutiny as long as they are paid entirely from sources other than the estate. **Legal counsel for the debtor, however, must submit all of their compensation, regardless of source, to court scrutiny, pursuant to Section 329 of the Code.**

*Id.* at 994-95 (emphasis added). Once again, this case did not discuss subject matter jurisdiction. Yet, the court acknowledged the importance of a bankruptcy court's ability to scrutinize payments to debtor's counsel, regardless of the source of such payments.

In *David & Hagner, P.C. v. DHP, Inc.*, 171 B.R. 429 (D.D.C. 1994), *aff'd*, 70 F.3d 637 (D.C. Cir. 1995), although the court noted that § 329 "pertains to payments allowed – or disallowed – from the *estate*, not the non-debtor entity," the court also held that "[t]he bankruptcy court was not divested of its authority to review compensation paid from [the guarantor], it simply chose not to exercise that authority." *Id.* at 434 (emphasis in original). Thus, this case also did not hold that the bankruptcy court lacked subject matter jurisdiction over such issues.[11]

Double Diamond's remaining arguments also do not relate to subject matter jurisdiction. Double Diamond's contention that the bankruptcy court exercised power over its property raises a question of *in rem* jurisdiction, not subject matter jurisdiction. "Federal courts most often hear actions *in personam*," which are "brought against a person rather than property" and "determine the rights and interests of the parties themselves

---

[11] Double Diamond also references *Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019), in which the court addressed whether it could approve a provision in a debtor's proposed chapter 11 plan that granted broad, nonconsensual third-party releases. *Aegean Marine Petroleum* did not involve employment or compensation under §§ 327-331 and, as a result, does not have any bearing on this case.

in the subject matter of the action." *Taul ex rel. United States v. Nagel Enters., Inc.*, No. 2:14-CV-0061-VEH, 2016 WL 304581, at *2-3 (N.D. Ala. Jan. 25, 2016) (internal citations omitted). In contrast, *in rem* actions are "against a thing" and do not "bind anyone with respect to personal liability." *Id.*

The bankruptcy court did not enter a judgment against Double Diamond's assets. Rather, the bankruptcy court simply entered an order for monetary liability against Double Diamond, i.e., an *in personam* judgment. As such, Double Diamond's arguments regarding *in rem* jurisdiction are irrelevant to this appeal.

In addition, Double Diamond's argument that the bankruptcy court improperly entered an order against a nondebtor party also is unavailing. This point raises a **personal** jurisdiction issue, not a **subject matter** jurisdiction issue. Having actively participated in Debtor's bankruptcy case, Double Diamond cannot seriously contend that the bankruptcy court lacked personal jurisdiction over Double Diamond. *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (holding that a "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction."), *amended*, 807 F.2d 1514 (9th Cir. 1987). The identity of the party against whom the court entered judgment is otherwise, at most, tangentially related to the issue of subject matter jurisdiction.

Finally, Double Diamond asserts that the bankruptcy court impliedly, and mistakenly, held that it was a surety instead of a guarantor. To this

end, Double Diamond raises several factual issues regarding why, under Nevada law, it should have been characterized as a guarantor instead of a surety. Once again, these arguments are not jurisdictional. First, as discussed above, the fact that an issue may implicate state law does not take away a court's subject matter jurisdiction. *See In re Harris*, 590 F.3d at 738. Second, these arguments raise factual issues, all of which are long foreclosed by Double Diamond's failure to timely appeal. Thus, Double Diamond has not identified a basis to question the bankruptcy court's subject matter jurisdiction.

As noted in *Espinosa*, for purposes of Civil Rule 60(b)(4), a court must lack even an "arguable basis" for jurisdiction to render a judgment void. 559 U.S. at 271. For all the reasons set forth above, the bankruptcy court had an "arguable basis" to assert subject matter jurisdiction and did not err in denying Double Diamond's request for relief under Civil Rule 60(b)(4).

**B.     The bankruptcy court did not violate Double Diamond's due process rights by depriving Double Diamond of notice or the opportunity to be heard.**

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Jones v. Flowers*, 547 U.S. 220, 225 (2006) ("[D]ue process does not require actual

notice. . . ."). In *Espinosa*, the Supreme Court discussed what constitutes a due process violation for purposes of Civil Rule 60(b)(4):

> Espinosa's failure to serve United with a summons and complaint deprived United of a right granted by a procedural rule. See Fed. Rule Bkrtcy. Proc. 7004(b)(3). United could have timely objected to this deprivation and appealed from an adverse ruling on its objection. But this deprivation did not amount to a violation of United's constitutional right to due process.
>
> . . .
>
> Here, United received *actual* notice of the filing and contents of Espinosa's plan. This more than satisfied United's due process rights. Accordingly, on these facts, Espinosa's failure to serve a summons and complaint does not entitle United to relief under Rule 60(b)(4).

559 U.S. at 272 (emphasis in original).

Double Diamond asserts that GTG's request to hold Double Diamond jointly and severally liable, and for "immediate" payment of its fees, was buried in an attachment to the Fee Application instead of in the body of the application itself. Thus, Double Diamond argues that it did not have proper notice or an opportunity to object.

Whether or not the Fee Application was procedurally proper, Double Diamond was not deprived of its constitutional due process rights. The concluding paragraph of the Fee Application, which constituted GTG's prayer for relief from the bankruptcy court, explicitly incorporated the proposed order into the body of the Fee Application. In addition, the first page of the three-page Notice of Fee Application explicitly stated that GTG

37

sought to hold Double Diamond jointly and severally liable, and that GTG was requesting "immediate" payment under the Engagement Agreement. The Notice of Fee Application also informed parties of the deadline to object to the relief requested in the Fee Application.

GTG served the Fee Application and the Notice of Fee Application on Double Diamond, Mr. Mann, and Mr. Kaplan. Notably, Double Diamond does not argue, and did not argue before the bankruptcy court, that it did not receive the Fee Application and the Notice of Fee Application. On these facts, even if the failure to prominently state the relief requested in the body of the Fee Application was procedural error, the error did not rise to the level of a constitutional due process violation.

Double Diamond also argues that its due process rights were violated when GTG failed to notify Double Diamond of Debtor's insolvency. According to Double Diamond, it agreed to be a guarantor, not a surety. As a result, Double Diamond asserts that, under Nevada law, GTG was required to first attempt collection from Debtor and then notify GTG of Debtor's inability to pay.

The Panel need not assess whether the bankruptcy court erred in treating Double Diamond as a surety instead of a guarantor. "In the interests of finality, the concept of void judgments is narrowly construed. A judgment is not void merely because it is or may be erroneous. . . ." *Boch Oldsmobile*, 909 F.2d at 661 (cleaned up).

38

Even if the Panel were to assume that the bankruptcy court erred in holding Double Diamond jointly and severally liable for "immediate" payment of GTG's fees, such an error does not rise to the level of a constitutional due process violation. For the same reasons noted above, Double Diamond was provided adequate notice and an opportunity to object. It did not.[12] As a result, Double Diamond cannot now seek relief via Civil Rule 60(b)(4).

## C. The bankruptcy court did not err in denying Double Diamond's request for relief under Civil Rule 60(b)(6).

Double Diamond argues that the bankruptcy court's failure to distinguish between a surety and a guarantor, as well as the purported noticing defects discussed above, provide grounds for relief from the bankruptcy court's Fee Order under Civil Rule 60(b)(6).

Pursuant to Civil Rule 60(c)(1), "[a] motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."[13] "What constitutes 'reasonable time' depends upon the facts

---

[12] Although the Panel does not need to address whether Double Diamond received adequate notice of Debtor's insolvency under Nevada law, the Panel notes that, at all times during the pendency of the bankruptcy case, Mr. Mann was served as both President and CEO of Double Diamond. As such, Mr. Mann, according to his own declarations, had personal knowledge of Debtor's books and records and, necessarily, of Debtor's financial condition.

[13] Although Double Diamond states in its appellate brief that its Civil Rule 60(b) Motion was timely under any subsection of Civil Rule 60(b), it only develops arguments under Civil Rules 60(b)(4) and (b)(6). As such, the Panel only will address the timeliness of Double Diamond's request under Civil Rule 60(b)(6).

of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (citing *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930-31 (5th Cir. 1976); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067-68 (10th Cir. 1980)).

The bankruptcy court did not abuse its discretion in holding that Double Diamond's request for relief under Civil Rule 60(b)(6) was not made within a reasonable time. The bankruptcy court's findings on this point are thorough. Among other things, the bankruptcy court found that: (i) Double Diamond and Mr. Mann were served with the Fee Application and attached proposed order; (ii) Double Diamond chose to litigate its liability in Canada instead of timely appealing the Fee Order or moving for relief under Civil Rule 60(b); (iii) in October 2018, Double Diamond retained counsel in Canada to oppose GTG's efforts to have the Fee Order recognized, at which point it must have been aware of the contents of the Fee Order; (iv) the Canadian litigation lasted years; and (v) it took over three years for Double Diamond to move for relief under Civil Rule 60(b).

Double Diamond does not contend that these factual findings are erroneous, nor does the record show any clear factual error. On these facts, the bankruptcy court did not abuse its discretion in holding that the pertinent factors set forth in *Ashford* rendered Double Diamond's request for relief under Civil Rule 60(b)(6) untimely.

40

## CONCLUSION

The bankruptcy court did not err in denying Double Diamond's request for relief from the Fee Order under Civil Rules 60(b)(4) and (b)(6). We therefore AFFIRM.